UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAN KWANG, <br><br> Plaintiff, <br><br> v. <br><br> ROYAL CANIN USA, INC, <br><br> Defendant. | CASE NO. C18-178 MJP <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE |

THIS MATTER comes before the Court on Defendant Royal Canin USA, Inc.'s Motion for Summary Judgment (Dkt. No. 27) and Plaintiff's Motion to Strike (Dkt. No. 37). Having considered the parties' briefs, and the documents submitted in support thereof, the Court DENIES Defendants' Motion for Summary Judgment and GRANTS in part and DENIES in part Plaintiff's Motion to Strike.

**Background**

Plaintiff Alan Kwang filed suit against his former employer Royal Canin USA, Inc. ("Royal Canin") and DOES 1-10 (collectively, "Defendants") for employment discrimination based on race. (Dkt. No. 1.)

Plaintiff, who is Chinese-American, worked as a Regional Sales Manager for Royal Canin from May 2014 through January 2017. (Dkt. No 1, ¶¶ 8, 16; Dkt. No. 36, Smith Decl., Ex. A at 19:15-19, 30:2-7.) Around January 2016, Victoria Burke, who is Caucasian, became Plaintiff's direct supervisor. (Dkt. No. 1, ¶ 9.) Plaintiff alleges that Ms. Burke immediately began to make frequent, discriminatory comments about Plaintiff's race and that these discriminatory comments continued throughout the time Ms. Burke was his supervisor. (Id., ¶¶ 9-11.)

Plaintiff alleges several specific discriminatory comments from Ms. Burke. Once, during a meeting, several Royal Canin employees were trying to decide where to eat, when one employee commented that the group should not go to one restaurant because "the food could be dog for all you know." (Dkt. No. 36, Ex. A at 130:20-131:20.) According to Plaintiff, "Ms. Burke replied that Plaintiff would be okay with that because his people eat that." (Id.)

At another meeting, Plaintiff alleges that Ms. Burke asked for a volunteer to set up a dual screen. (Id.) When Plaintiff raised his hand, Ms. Burke stated, "I kn[e]w you could Alan. Your people are great at this." (Id. at 133:4-19.) When attempting to work out a formula on an Excel spreadsheet, Plaintiff alleges Ms. Burke said, "his people are better at math," while referring to Plaintiff. (Id.) Plaintiff also alleges that when Ms. Burke was attempting to resolve technology issues she would comment that she was glad she had an Asian person on her team. (Id. at 137:13-138:17.) In another instance, when Ms. Burke was deciding which Regional Manager

would sell to a veterinary clinic, she discovered one of the doctors was Asian and asked Plaintiff, "Wouldn't it be easier if you took all the Asian ones?" (Id. at 149:18-150:15.)

Sometime in the late spring or early summer of 2016, Plaintiff told Ritston Brevitt, an Area Manager, and Kathy Joyce, Plaintiff's former Area Manager, about Ms. Burke's comments. (Id. at 129:24-130:21, 131:20-133:19; Ex. G, ¶ 8.) According to Plaintiff, after he told Mr. Brevitt about several specific discriminatory comments, Mr. Brevitt told him "not to make a big deal out of it so you don't create a scene or give them anything to respond to." (Id. at 134:1-3.) After speaking with Mr. Brevitt, Plaintiff spoke with Ms. Burke about her joking, telling her that "sometimes her humor was inappropriate," without giving specific examples or telling her that he felt these jokes were discriminatory. (Dkt. No. 28, Gallagher Decl., Ex. A at 142:12-16.) Plaintiff testified that during this conversation he "was trying to tiptoe around it in order to preserve the relationship that I had with [Ms. Burke]." (Id. at 142:8-9.)

<u>Poor Performance Review</u>

Defendants contend that Plaintiff was failing to perform many of his primary duties as a Regional Manager. (Dkt. No. 27 at 7-13.) For example, Plaintiff provided only infrequent coaching sessions to his direct reports, as opposed to the 48 he was required to provide each year. (Dkt. No. 34, Mackin Decl., ¶ 7; Dkt. No. 31, Gauthier Decl., ¶ 3, Dkt. No. 33, Germanis Decl., ¶¶ 3-4; Dkt. No. 29, Benzinger Decl. ¶ 3). Defendants also contend that Plaintiff "had very poor interactions with his District Managers" (Mackin Decl., ¶ 4), was "very negative in his comments and communications, but would not offer a solution to his criticisms" (Id. ¶ 5), expressed a negative attitude during a Gallup Impact Planning session (Dubois Decl., ¶ 11), and would often not respond to a Key Account Manager's questions for weeks at a time (Mackin Decl. ¶ 4). According to Defendants, Plaintiff also failed to perform many of the administrative

tasks that were part of his job as a Regional Manager. (Dkt. No. 27 at 10.) Plaintiff admits he was late submitting his expense reports (Dkt. No. 28, Ex. A at 83:18-25), calibration ratings (Id. at 120:4-16), and line manager comments (Id.).

Plaintiff disputes the extent and severity of many of Defendants' allegations about his performance. (See Dkt. No. 35 at 13-17.) For example, Plaintiff contends that he received conflicting expectations on field coaching reports. (Dkt. No. 36, Smith Decl., Ex. A at 52:3-55:1, 57:6-15, 59:9-16.) On Expense Accrual Summaries sent by Ms. Burke to her team in August and November 2016, Plaintiff was in third or fourth place out of eight for timeliness. (Dkt. No. 36, Smith Decl., Exs. O, P.)

Plaintiff also points to evidence that he was performing some aspects of his job well. In Plaintiff's 2016 Performance and Development Review, Victoria Burke commented that, "This year Alan's regional team has over-delivered on sales growth objectives and met expectations for their [Key Performance Indicator] delivery." (Smith Decl. Exhibit H at RC000026.) And Plaintiff's Gallup Survey score, one metric Royal Canan uses to assess Regional Managers, improved in 2016. (Id., Ex. G at 70:2-22.)

Plaintiff also points to employees with worse performance issues who ultimately fared better at Royal Canan: Bill Adams and Eric Pruitt. (See Dkt. No. 35 at 14-16.) Bill Adams also reported directly to Ms. Burke, submitted late expense reports, had issues with field coaching, and was the subject of behavioral complaints, but was not terminated. (Dkt. No. 36, Smith Decl., Ex. B at 17:7-13; 18:3-19:24; Id., Ex. L 358-61.) Eric Pruitt, another Regional Manager Ms. Burke supervises, received "below expectations" reviews in 2015 and 2017 but was not placed on an Off-Track plan and was not terminated. (Id., Ex. B at 61:11-23; 62:9-12.)

1    Around December 22, 2016 Plaintiff received a below expectations performance review
2 and was set to be placed on an Off-Track Plan. (Dkt. No. 28, Gallagher Decl., Ex. A at 175:4-5;
3 Id., Ex. B at 51:8-18.) Plaintiff's poor review from Ms. Burke was his first poor performance
4 review with Royal Canan. (Id., Exs. E-F.)

Complaint

Shortly after receiving his poor review, Plaintiff alleges he made a formal complaint to Defendants' human resources representative, Lindsay Dugger. (Id. 156:23-158:5, 177:3-10.) Plaintiff contends that Ms. Dugger told him "it was all in [his] head and that [he was] being too sensitive to this" and denied that Ms. Burke had taken any retaliatory action against him. (Id. at 129:6-17.) Ms. Dugger denies receiving any complaints of harassment or discrimination against Ms. Burke or having any discussion with Plaintiff about derogatory comments. (Dkt. No. 28, Gallagher Decl., Ex. C at 15:25-16:4; 19:19-22.) Plaintiff claims Ms. Dugger lacks credibility. (Dkt. No. 35 at 12.) Kathy Joyce, one of Defendants' former employees testified that she repeatedly complained to Ms. Dugger about being harassed and threatened by another employee. (Dkt. No. 36, Ex. D, ¶ 7.) After several complaints, Ms. Joyce had a conference call with Ms. Dugger, where Ms. Dugger "claimed to not understand the issue," and "led Ms. Joyce to believe she had not fully read my written documentation," asking Ms. Joyce to explain what happened. (Id.)

According to Plaintiff, after speaking with Ms. Dugger he called a Royal Canin ombudsman, who suggested a three-way conference call with Ms. Burke. (Smith Decl., Ex. A at 181:9-182:12.) Plaintiff alleges that during the call, Ms. Burke initially denied making the comments, but later said Plaintiff took them the wrong way. (Id. at 185:2-16.) After the call, the

ombudsman offered to speak with Ms. Burke at the National Sales Meeting in January. (Id. at 187:17-188:12.)

Plaintiff alleges that Ms. Burke is also not credible regarding Plaintiff's reporting. (Dkt. No 35 at 12.) Ms. Burke testified that she was unaware of Plaintiff's allegations until she reviewed the interrogatories in this matter. (Dkt. No. 36, Ex. B at 35:21-36:15.) But in notes Ms. Burke took during her phone call with the ombudsman, she wrote "jokes – m[anager] meeting 'foods,' Alan's peoples . . . insensitive comments," implying Ms. Burke was aware of Plaintiff's allegations long before she received his interrogatory responses. (Id., Ex. I at 12.)

Termination

Defendants allege that two events occurred at Royal Canin's national sales meeting in the third week of January 2017 that led to Plaintiff's termination. (Dkt. No. 27 at 16-17.) First, Defendants allege that during the sales meeting, Ms. Burke walked in on an argument between two of Plaintiff's direct reports and saw "Plaintiff with his head down closing his computer or shutting off the projector as if he were ignoring the situation." (Dkt. No. 28, Gallagher Decl., Ex. B at 32:24-33:2; Dkt. No. 33, Germanis Decl. ¶ 11.) Defendants also allege that several district managers saw Plaintiff leave during an awards presentation where another regional manager received an award. (Dkt. No. 29 Benzinger Decl. ¶ 11; Dkt. No. 31 Gauthier Decl. ¶ 12; Dkt. No. 33, Germanis Decl. ¶ 13.) Ms. Burke was informed that Plaintiff stood, said "that's bullshit," and walked out of the awards. (Dkt. No. 28, Gallagher Decl., Ex. B at 85:10-14.)

Plaintiff disputes these incidents. (Dkt. No. 35 at 17.) He acknowledges that an argument occurred but asserts that he ended the argument without Ms. Burke's assistance. (Dkt. No. 36, Smith Decl., Ex. A at 189:15-190:8.) Plaintiff also denies making the comment Defendants' allege during the awards dinner. (Id. at 192:11-193:2; Id., Ex. C at ¶ 6.)

Royal Canan terminated Plaintiff's employment on January 20, 2017. (Dkt. No. 28, Gallagher Decl., Ex. A at 193:13-25.) On or about November 2, 2017, Plaintiff filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"), Seattle Field Office. (Dkt. No. 1, ¶ 19.) On December 6, 2017, the EEOC mailed Plaintiff a Right-to-Sue Letter. (Id.)

Plaintiff has asserted four causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq., based on harassment, discrimination, wrongful termination, and retaliation. (Dkt. No. 1 at 5-7.)

## Discussion

### I. Plaintiff's Motion to Strike

As an initial matter, Plaintiff moves to strike paragraphs from the declarations of Darren Mackin (Dkt. No. 34), Joanna Gautheier (Dkt. No. 31), Keri Benzinger (Dkt. No. 29), Patrick Dubois (Dkt. No. 30), Michael Shaw (Dkt. No. 32), and to strike in its entirety the Supplemental Declaration of Michael Shaw (Dkt. No. 39), and the Declaration of Victoria Burke (Dkt. No. 38). (Dkt. No. 35 at 23-25; Dkt. No. 41.)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). Plaintiff's Motion to Strike is therefore considered first.

#### a. Statements in the Declaration of Darren Mackin

Plaintiff moves to strike statements within paragraphs four, five, 10, and 15 of Darren Mackin's declaration because they do not provide sufficient factual support to demonstrate the statements are based on Mr. Mackin's personal knowledge. (Dkt. No. 35 at 23.) In paragraphs four and five, Mr. Mackin declares:

> While working as a Key Account Manager, I observed that Mr. Kwang had very poor interactions with his District Managers;
>
> While working as Alan Kwang's peer as Regional Manager, I observed that Mr. Kwang was very negative in his comments and communications, but would not offer a solution to his criticisms;

(Dkt. No. 34, Mackin Decl., ¶¶ 4, 5.)

Paragraphs four and five of Mr. Mackin's declaration satisfy Federal Rule of Civil Procedure 56(c)(4), which requires that a declaration be based on personal knowledge. As correctly noted by Defendant, Mr. Mackin's declaration describes the basis of his knowledge—working as Plaintiff's peer and observing Plaintiff's interactions with other Royal Canan employees. (Dkt. No. 37 at 8.)

Plaintiff also seeks to strike paragraph 10: "Regional Managers did not input coaching notes into the Salesforce program because of sensitivity of that information and the ability for other associates to access Salesforce data." (Dkt. No. 34, ¶ 10.) While Mr. Mackin describes his knowledge of "proper procedures for field coaching and the preparation of field coaching reports" and his familiarity with "Royal Canin's Salesforce program" (Id., ¶ 6), he does not describe reviewing regional managers' coaching notes; the statement therefore fails to satisfy the personal knowledge requirements of Rule 56(c)(4).

The final statement Plaintiff seeks to strike: "I believe that any action taken was due to Mr. Kwang's performance and behavior," (Id. ¶ 15) is a summary opinion statement from Mr. Mackin, a fact witness, and is stricken. See Fed. R. Evid. 701 advisory committee's note ("If . . . attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule.")

Plaintiff's Motion to Strike paragraphs four and five of the Declaration of Darren Mackin is denied. Paragraphs 10 and 15 are stricken.

### b. Statements in the Declarations of Joanna Gauthier and Keri Benzinger

Plaintiff next seeks to strike identical statements in the Declarations of Joanna Gauthier and Keri Benzinger: "I had several discussions with other district managers under Mr. Kwang's supervision, who similarly did not receive coaching or development." (Dkt. No. 31, Gautheier Decl., ¶ 6; Dkt. No. 29, Benzinger Decl. ¶ 5.) Plaintiff argues these are "based entirely on out of court statements made by someone other than the declarants, and offered to prove the truth of the matter stated." (Dkt. No. 35 at 24.) Defendants counter that these statements, "whether or not considered for the truth of the matter," "demonstrate that such concerns were being shared by associates under Mr. Kwang's supervision, demonstrating the perception of Royal Canin's associates that Mr. Kwang was not fulfilling his responsibilities as Regional Manager." (Dkt. No 37 at 9.)

Even if not admitted for the truth of the matter stated, these statements are properly excluded. Each declarant offers the same brief sentence of limited probative value and the statement gives rise to the inference that Plaintiff was not performing his duties without allowing him the opportunity to investigate where these statements originated or what exactly was said. These identical statements in the declarations of Joanna Gauthier and Keri Benzinger are therefore stricken.

### c. Statements in the Declaration of Patrick Dubois

Plaintiff seeks to strike three statements from the Declaration of Patrick Dubois because the statements are not based on Mr. Dubois's personal knowledge, are conclusory, and are unsupported by facts. (Dkt. No. 35 at 25.) The first two statements that Plaintiff seeks to strike:

> Mr. Kwang expressed a very negative attitude toward a Gallup Impact Planning session *which made other attendees question how he was able to manage his team*;
>
> *[W]hen it was known* that Mr. Kwang was being coached for performance issues.

(Dkt. No. 30, Dubois Decl., ¶¶ 11-12 (emphasis added).)

These statements do not comply with Fed. R. Civ. P. 56(c)(4) as they describe the thoughts of other employees without providing details that would allow Plaintiff a fair opportunity to dispute the criticism.

Plaintiff also seeks to strike paragraph 13: "I believe that any action taken was due to Mr. Kwang's performance and behavior." (Id., ¶ 13.) This summary statement of opinion from Mr. Dubois, a fact witness, is stricken. See Fed. R. Evid. 701.

The statements in paragraphs 11 through 13 in the Declaration of Patrick Dubois are stricken.

### d. Statements in the Declaration of Michael Shaw, the Supplemental Declaration of Michael Shaw, and the Declaration of Victoria Burke

Plaintiff seeks to strike paragraphs nine, 10, and 11 of the Declaration of Michael Shaw, asserting that these violate the Best Evidence Rule, Fed.R.Evid. 1002, which requires that a party seeking to prove the content of a document do so by submitting the document itself unless impossible or impracticable. (Dkt. No. 35 at 24.) Michael Shaw declares:

> Alan Kwang logged 88 events in Salesforce from September 2015 to January 2017. Out of the 88 events, 11 of the records were only meeting 'invites' which were never given actual dates and they did not have details. For the other 77 events, Salesforce does not contain any description in regards to Field Coaching Sessions provided by Alan Kwang.

(Dkt. No. 32, Shaw Decl., ¶¶ 9-11.)

Following Plaintiff's Motion to Strike, Defendants submitted the Supplemental Declaration of Michael Shaw (Dkt. No. 39) and the Declaration of Victoria Burke (Dkt. No. 38), which include each of the seventy-seven Salesforce events entered by Plaintiff from September 2015 through January 2017 and the field coaching reports. Plaintiff seeks to have these new declarations stricken as well, arguing that they give Defendants a "second bite to lay out new evidence" at the expense of Plaintiff who was required "to incur the cost and effort of additional

filings—a motion for leave to file a sur-reply, and the sur-reply itself . . . ." (Dkt. No. 41 at 3 (quoting Gutierrez v. 78th Judicial Dist. Court, 2009 WL 1507415, at *1 (W.D. Mich. May 29, 2009).)

The Declarations do not include new argument, but instead produce the best evidence available to support the argument in Defendants' Motion for Summary Judgment regarding Plaintiff's Salesforce entries. (Dkt. No. 27 at 12-13.) This is the result contemplated by the Best Evidence Rule: Plaintiff now has access to the underlying evidence and can contest it, if he wishes. Further, Plaintiff had the opportunity to respond to these declarations through his Surreply. (Dkt No. 41.)

Plaintiff's Motion to Strike statements in the Declaration of Michael Shaw, the Supplemental Declaration of Michael Shaw, and the Declaration of Victoria Burke is denied.

**II. Defendants' Motion for Summary Judgment**

Plaintiff asserts employment discrimination claims under Title VII on the basis of race, alleging that he was subjected to harassment and discrimination because he is Chinese-American and was wrongfully terminated and subjected to retaliation for reporting the discriminatory conduct. (Dkt. No. 1.) Defendants seek summary judgment on all claims. (Dkt. No. 27.)

    **a. Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v.

1  Liberty Lobby, Inc., 477 U.S. 242, 253 (1986).  On a motion for summary judgment, "[t]he

2  evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

3  favor."  Id. at 255.

4  The Ninth Circuit imposes a high standard for granting summary judgment in

5  employment discrimination cases.  The court has stated that "very little evidence" is required to

6  survive summary judgment because "the ultimate question is one that can only be resolved

7  through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a

8  full record."  Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996) (internal

9  quotation marks and citation omitted).

**b. Imputed to Defendant**

As an initial matter, and although not explicitly argued in Defendants' Motion for Summary Judgment, Plaintiff argues in his Response that Ms. Burke's comments should be imputed to Royal Canan.  (Dkt. No. 35 at 19 20.)  Defendants reply that Ms. Burke's actions cannot be imputed to Royal Canan because her position was not sufficiently high enough in the company's hierarchy.  (Dkt. No. 37 at 7.)  Title VII requires that the employee's conduct of harassment be imputed to the employer if the employer is to be liable for its employee's conduct. Gillum v. Safeway Inc., Case No. 2:13-CV-02047, 2015 WL 1538453, at *5 (W.D. Wash. Apr. 7, 2015) (analyzing a Title VII claim under the Washington Law Against Discrimination imputation framework).  "The offending manager must hold a sufficiently high level position to be considered its alter ego."  Id. (citations omitted).  "A manager is considered the employer's alter ego if he can influence terms and conditions of the plaintiff's employment."  Id.

In this case, Ms. Burke clearly had the authority to "influence the terms and conditions of Plaintiff's employment" because Defendants admit that Ms. Burke participated in the decision to

1 terminate Plaintiff. (Dkt. No. 27 at 17.) Where, as alleged here, "the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." Vance v. Ball State Univ., 570 U.S. 421, 424 (2013). Ms. Burke's alleged conduct is therefore imputed to Defendant Royal Canan.

**c. Harassment**

To succeed on a Title VII hostile work environment claim based on race, an employee must demonstrate: (1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Reynaga v. Roseburg Forest Products, 847 F.3d 678, 687 (9th Cir. 2017). The Supreme Court has cautioned that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 776 (1998). Additionally, "[t]he working environment must both subjectively and objectively be perceived as abusive." Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995). "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." Id. (citations omitted).

Defendants argue that Plaintiff has not made out a prima facie case of harassment based on his race because he has not demonstrated that Ms. Burke's comments were sufficiently severe and pervasive to "'pollute[] his workplace.'" (Dkt. No. 27 at 19 (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir. 1994).) But viewing the evidence in the light most favorable to Plaintiff, a reasonable fact-finder could conclude that comments from Ms. Burke— for example, her alleged comment that Plaintiff's "people" eat dog (Dkt. No. 36, Ex. A at

1 130:20-131:20)—occurring frequently and throughout the period that Ms. Burke supervised
2 Plaintiff, were sufficiently severe and pervasive to alter the conditions of his work environment.
3 Reynaga, 847 F.3d at 687. Plaintiff has also provided sufficient evidence that he experienced these
4 comments as abusive, submitting evidence that he spoke to other employees about the comments
5 and attempted to speak with Ms. Burke even though he was fearful that it would damage his
6 working relationship. (Dkt. No. 28, Gallagher Decl., Ex. A at 142:12-16; 142:8-9.)

### d. Discrimination and Wrongful Termination

Employment discrimination claims under Title VII are typically analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010). The plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) he is a member of a protected class; (2) he was qualified for his position or performing satisfactory work; (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably, or other circumstances surrounding the adverse action give rise to an inference of discrimination. Id. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. If the defendant succeeds, then the plaintiff must produce evidence that defendant's articulated reason is mere pretext for unlawful discrimination. Id. The amount of proof needed to establish a prima facie case on summary judgment "is minimal and does not even need to rise to the level of preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994), as amended on denial of reh'g (July 14, 1994). Defendants do not dispute that Plaintiff is a member of a protected class, suffered an adverse employment action, or that similarly situated employees outside the protected class were treated more favorably. (See Dkt. No. 27 at 21-22.) Instead,

1  Defendants argue that Plaintiff has not presented a prima facie case of discrimination because he
2  has not demonstrated satisfactory job performance.  (Dkt. No. 27 at 24.)
3  Plaintiff has presented evidence that creates a triable issue of material fact as to whether
4  he was satisfactorily performing his job.  Although Defendants note Plaintiff's tardy expense
5  reports, Plaintiff has provided Expense Accrual Summaries sent by Ms. Burke to her team in
6  August and November 2016, demonstrating that Plaintiff was performing in the middle of his
7  team for timeliness.  (Dkt. No. 36, Smith Decl., Exs. O, P.)  Plaintiff's Gallup Survey score
8  improved in 2016.  (Id., Ex. G at 70:2-22.)  And Plaintiff points to employees with worse
9  performance issues who were not known to have received poor performance reviews or received
10 poor performance reviews but were not placed on "Off-Track" plans.  (Dkt. No. 36, Smith Decl.,
11 Ex. B at 17:7-13; 18:3-19:24; Id., Ex. L; Id., Ex. B at 61:11-23; 62:9-12.)
12 The burden now shifts to Defendants to articulate a legitimate, non-discriminatory reason
13 for the adverse employment action.   Hawn, 615 F.3d at 1155.  Defendants have done so.
14 Plaintiff admits he was late submitting his expense reports (Dkt. No. 28, Ex. A at 83:18-25),
15 calibration ratings (Id. at 120:4-16), and line manager comments (Id.).  And Defendants have
16 submitted evidence showing that Plaintiff provided only infrequent coaching sessions to his
17 direct reports, as opposed to the 48 he was required to provide each year.  (Dkt. No. 34, Mackin
18 Decl., ¶ 7; Dkt. No. 31, Gauthier Decl., ¶ 3, Dkt. No. 33, Germanis Decl., ¶¶ 3-4; Dkt. No. 29,
19 Benzinger Decl. ¶ 3.)  Defendants have also put forward evidence that Plaintiff "had very poor
20 interactions with his District Managers" (Mackin Decl., ¶ 4), was "very negative in his
21 comments and communications, but would not offer a solution to his criticisms" (Id. ¶ 5),
22 expressed a negative attitude during a Gallup Impact Planning session (Dubois Decl., ¶ 11), and
23
24

would often fail to respond to a Key Account Manager's questions for weeks at a time (Mackin Decl. ¶ 4).

The burden now shifts back to Plaintiff to demonstrate Defendants' proffered legitimate, non-discriminatory reasons for his poor review and termination were merely pretextual. Plaintiff must present "very little" direct evidence of discrimination to show pretext. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir.1998). As discussed above, Plaintiff has offered multiple examples of comments that indicate discrimination based on his race. (See e.g., Dkt. No. 36, Ex. A at 130:20-131:20.) "Racist or sexist statements constitute such 'direct evidence' of discrimination." Id. (quoting Aragon, 292 F.3d 654, 662 (9th Cir. 2002)). "Direct evidence need not be 'specific and substantial.'" Id. (quoting Dominguez–Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005)). As alleged, Ms. Burke's comments are sufficient to preclude summary judgment. See Nguyen v. Qualcomm, Inc., 501 F. App'x 691, 693–94 (9th Cir. 2012) (internal citations omitted) ("[The Ninth Circuit] has repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer.").

Summary judgment is therefore inappropriate on Plaintiff's employment discrimination claims.

### e. Retaliation

Plaintiff also asserts retaliation claims under Title VII. "To establish a prima facie case of retaliation, an aggrieved employee must show that (1) he has engaged in statutorily protected expression; (2) he has suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action." EEOC v. Dinuba Med. Clinic, 222 F.3d 580, 586 (9th Cir.2000) (internal quotation marks omitted). Once a plaintiff establishes this

prima facie case, the McDonnell Douglas burden shifting analysis applies. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir.2000).

Defendants argue that Plaintiff has failed to demonstrate causation. (Dkt. No. 27 at 28.) Defendants admit that Plaintiff "was terminated after he alleges he complained of harassment and discrimination to Royal Canin's [human resource] department and ombudsman," but deny that was "due to his making such complaints, but rather due to his continued failure to perform his duties as a Regional Manager . . . and the further deterioration of his attitude and behavior, as demonstrated by [Plaintiff]'s actions at the national sales meeting." (Id. at 29.)

Viewing the evidence in the light most favorable to Plaintiff, a reasonable fact-finder could conclude that the incidents alleged suggest a causal link between Plaintiff's complaints and his termination. First, Plaintiff's termination occurred in close temporal proximity to his complaints to supervisors, including the conference call with the ombudsman and Ms. Burke. (Smith Decl., Ex. A at 185:2-16.) Defendants concede that Ms. Burke participated in the decision to terminate Plaintiff. (Dkt. No. 27 at 17.) "The Ninth Circuit has held that causation 'may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" Ellorin v. Applied Finishing, Inc., 996 F. Supp. 2d 1070, 1090 (W.D. Wash. 2014) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.1987)).

Further, a reasonable fact-finder could find Defendants' proffered explanation for terminating Plaintiff is pretext. Plaintiff has submitted evidence that contradicts Defendants' description of events at the national sales meeting. (See Dkt. No. 36, Smith Decl., Ex. A at 189:15-190:8, 192:11-193:2; Id., Ex. C at ¶ 6.) Plaintiff has also provided evidence of

co-workers with similar performance issues who did not file complaints and were not terminated. (Dkt. No. 36, Smith Decl., Ex. B at 17:7-13; 18:3-19:24; 61:11-23; 62:9-12.) And a reasonable fact-finder could conclude it was implausible that Plaintiff's "continued failure to perform his duties" was so severe as to warrant termination, when five short weeks earlier—and before he filed a complaint—the stated goal was to help him improve through an "off-track" improvement plan. (Dkt. No. 28, Gallagher Decl., Ex. A at 175:4-5; Id., Ex. B at 51:8-18.)

Summary Judgment is therefore denied as to Plaintiff's retaliation claim.

**Conclusion**

The Court GRANTS in part and DENIES in part Plaintiff's Motion to Strike. The Court DENIES summary judgment to Defendants on all claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 16, 2019.

Marsha J. Pechman
United States District Judge